## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-01709-WYD-KLM


SHANE McMILLAN,

      Plaintiff

v.

WILEY, FOX,  JONES,  JAVERNICK,
COLLINS, FENLON, MADISON,
NALLEY, WATTS, LAPPIN, and DAVIS,

      Defendants.

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

    Plaintiff Shane McMillan, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendants' Motion for Judgment on the Pleadings.

### PRELIMINARY STATEMENT

    At the core of McMillan's Second Amended Complaint (the "Complaint") is the allegation that he has been—and remains—housed in a solitary confinement unit at ADX for approximately four years and was placed there without the process due to an inmate who is confined to isolation for extended and indefinite periods.  Defendants insist that McMillan is housed in the "general population" and not entitled to due process in connection with his placement there.  Now, eight months after answering McMillan's complaint, and less than one month after receiving McMillan's discovery requests, Defendants filed their Motion for Judgment on the Pleadings (the "Motion") to dismiss three of McMillan's four claims.  As this

-1-

Court has recognized, McMillan's allegations of constitutional violations require "a fact-specific, individualized determination." Order Setting Prelim. Sched. Conf. at 2 (Doc. #54). Defendants' arguments in favor of dismissal should be rejected and McMillan should be permitted to complete his discovery.

## BACKGROUND

The Bureau of Prisons transferred McMillan to the United States Penitentiary, Administrative Maximum ("ADX"), in 2007. Prior to his transfer to ADX, McMillan did not receive a hearing or other type of process. Compl. at 4.[1] Since McMillan's transfer, he has been housed in solitary confinement in an 8-foot by 12-foot cell with double doors that are meant to restrict his communication with others. *Id*. at 6. Although he is permitted solitary exercise outside of his cell up to five times per week, McMillan eats all of his meals alone in his cell, and his interaction with prison staff is through his cell doors. *Id*. at 6, 12. "He has no interaction with other human beings" and he has "no opportunities to go to a gym, a library, cafeteria, religious services, or any other activity" with others. *Id*. at 12. As a consequence of his extended and indefinite period of isolation, McMillan has suffered "psychological torture." *Id*. at 8.

The Complaint alleges that the named defendants acted in concert to keep him in solitary confinement indefinitely without due process by systematically treating his housing unit as a "general population" unit when it is in fact a solitary confinement unit. *Id*. at 4-6. McMillan alleges that Defendants Lappin, Nalley, and Willey "transformed" the general population housing units at ADX into solitary confinement units while camouflaging those units' true nature

---

[1] Citations to the pages in McMillan's Complaint (Doc. # 21) are to the page numbers printed in the header of the document by the Court's filing system and not to McMillan's numbering.

517372

through false documentation and refusal to admit the true conditions of confinement there. *Id*. at 7. McMillan also alleges that defendants Fenlon, Collins, and Madison, who comprise his Unit Team at ADX, preside over his review meetings and have worked together to keep McMillan in solitary confinement without the process he is entitled to. *Id*. at 13-15.

McMillan prepared and filed his second amended complaint pro se. (Doc. #21.) He alleges four claims for relief in his complaint, although he only specifically enumerates two claims. First, McMillan alleges that his transfer to ADX and continued placement in indefinite solitary confinement violate his rights under the Due Process Clause. Compl. at 6-12. Second, he alleges that his indefinite solitary confinement constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id*. Third, McMillan alleges that Defendants conspired to deprive him of his constitutional rights. *Id*. at 13-15. Fourth, he alleges that Defendants' conduct violates Bureau of Prisons policy and the Code of Federal Regulations and thereby constitutes an abuse of discretion under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Id*. at 11, 17.

Defendants filed their Motion seeking to dismiss the first, second, and third claims described above, claims that Defendants characterize as seeking relief under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Mot. at 1. Defendants' characterization casts the scope of the Complaint too narrowly. While McMillan does seek *Bivens* relief against the Defendants, he also seeks injunctive and declaratory relief against them in their official capacities. Compl. at 17-18. Defendants have not moved to dismiss McMillan's claim for their violations of the Administrative Procedure Act.

517372

**STANDARD OF REVIEW**

A Rule 12(c) motion for judgment on the pleadings should be analyzed under the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  When analyzing a motion to dismiss for failure to state a claim, the Court "must accept all the well-pleaded factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff."[2]  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Because dismissal is such a "harsh remedy," there is a "powerful presumption" against dismissal for failure to state a claim under Rule 12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999) (internal quotations omitted).

McMillan's Complaint need only "contain a 'short and plain statement of the claim showing that [he] is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erikson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).  In addition, because McMillan prepared his complaint without the assistance of a lawyer, the Court must construe the Complaint liberally.[3] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess

---

[2] To the extent Defendants rely on facts asserted in their *Martinez* report (Doc. # 53-1), those facts are contested and not properly before the Court.  McMillan attempted to file a factual rebuttal to Defendants' *Martinez* report, but that rebuttal was rejected without prejudice as procedurally improper by the Court (Doc. #52); *see also* Order Setting Prelim. Sched. Conf. at 3 (Doc. #54).

[3] Undersigned counsel entered their appearances on behalf of McMillan after the Complaint and Answer were filed (Doc. # 57, 58, 59).

517372

whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation omitted).

## ARGUMENT

### A.     Defendants' Motion Should Be Denied Because the Court Has Directed that the Case Proceed to Discovery

In conjunction with their Answer to the Complaint, Defendants filed a *Martinez* Report that they asserted "show[ed] that they have not violated Plaintiff's constitutional rights." (Doc. # 53, at 3; Doc. # 53-1.) On July 13, 2010, Magistrate Judge Mix *sua sponte* issued an Order Setting Preliminary Scheduling Conference, noting that the Defendants' *Martinez* Report was of limited usefulness because, among other things, "there are no clear jurisdictional issues that need to be resolved." (Doc. #54, at 2.) Moreover, the Order noted that "[w]hether Defendants have violated Plaintiff's constitutional rights is a fact-specific, individualized determination" and concluded that "this case should now proceed through customary pretrial litigation." (*Id.* at 2-3.)

In light of this Order, and following a scheduling conference that established discovery limits and deadlines (*see* Doc. #55), McMillan served interrogatories and requests for production on Defendants. Now, eight months after answering McMillan's Complaint and despite the Court's direction that the case should "proceed through . . . pretrial litigation" (Doc. #54, at 3), Defendants filed the present motion attacking McMillan's Complaint as insufficiently pleaded. Defendants' motion for judgment on the pleadings should be denied so that McMillan can complete the discovery required for the "fact-specific, individualized determination" that forms the basis of this action. (*Id.*)

517372

**B.    McMillan Concedes that Damages Are Not Available Against Defendants in Their Official Capacities**

McMillan concedes that the United States has not waived its sovereign immunity as to the availability of money damages for claims such as his.  *See* Mot. at 6-7.  Therefore, his money damages claims are only asserted against the Defendants in their individual, not official, capacities.

**C.    This Court May Exercise Personal Jurisdiction Over Defendants Lappin and Nalley**

In Section IV of their Motion, Defendants argue that this Court does not have personal jurisdiction over Defendants Lappin, Naley, and Watts because they do not have sufficient minimum contacts with Colorado. *See* Mot. at 7-9.  Courts may exercise personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State."  *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal quotation marks and citation omitted).  Defendants' argument should be rejected because McMillan's Complaint alleges sufficient contacts by Lappin and Naley with Colorado.[4]

Lappin is the National Director of the Bureau of Prisons in Washington, D.C.  Compl. at 3.  Nalley is the Regional Director of the Bureau of Prisons in Kansas City, Kansas.  *Id.*  The Complaint alleges that Lappin and Nalley had direct knowledge of and approved the transformation of McMillan's ADX housing unit from a true "general population" unit into a solitary confinement "control" unit.  *Id.* at 7.  The Complaint further alleges that Lappin and Nalley were essential to that transformation and have knowledge of the due process required before placing inmates in extended solitary confinement, yet have actively avoided the implementation of due process for inmates like McMillan.  *Id.* at 8-9.

---

[4] McMillan concedes that the Court lacks personal jurisdiction over Defendant Watts.

517372

Defendants argue that Lappin's and Nalley's contacts with Colorado through their involvement in the management of ADX are insufficient contacts because "supervisory responsibilities" are insufficient contacts. Mot. at 8. The cases that Defendants cite for their position are distinguishable. In *Hill v. Pugh*, for example, the court affirmed the dismissal of claims by an ADX inmate against the National Director and a Regional Director of the Bureau of Prisons, both of whom resided outside of Colorado. 75 App'x 715, 719 (10th Cir. 2003). The court explained that the trial court lacked personal jurisdiction over those defendants because the allegations merely asserted that they had supervisory responsibility over ADX and had been sent grievances by the plaintiff. *Id.* In this case, by contrast, McMillan has alleged purposeful contact by Lappin and Nalley with Colorado. McMillan alleges that they personally oversaw, approved, and were essential to specific activity at ADX that harmed him, namely the transformation of general housing units into solitary confinement control units. *See Arocho v. Nafziger*, 367 App'x 942, 947 (10th Cir. 2010) (reversing dismissal of ADX prisoner's claim against Lappin for lack of personal jurisdiction because Lappin was actively involved in conduct that caused alleged harm). McMillan has alleged sufficient contacts for this Court to assert personal jurisdiction over Lappin and Nalley.

**D.     McMillan Has Properly Asserted a *Bivens* Claim for Violation of his Due Process Rights**

In Section V of their Motion, Defendants argue that the Court should not recognize a *Bivens* remedy for McMillan's procedural due process claim. Mot. at 9-11. Defendants' argument should be rejected because numerous courts have recognized that a *Bivens* remedy is available for alleged procedural due process violations.

"[T]he decision in *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the

district courts to obtain an award of monetary damages against the responsible federal official."
*Davis v. Passman*, 442 U.S. 228, 234 (1979) (quotation omitted).  Although *Bivens* itself
involved violation of the Fourth Amendment guarantee against "unreasonable searches and
seizures," the U.S. Supreme Court subsequently recognized that a *Bivens* cause of action is also
available for violations of the Fifth Amendment's Due Process Clause.  *See id.* at 248-49; *Cohen
v. Busch*, No. 08-CV-02188, 2010 WL 2593937, at *9 (D. Colo. May 10, 2010) ("The Supreme
Court has recognized *Bivens* liability for violations of the Fifth Amendment Due Process
Clause.").

   Furthermore, courts regularly allow *Bivens* actions to proceed in the procedural due
process context.  *See, e.g., Bonner v. Outlaw*, 552 F.3d 673, 675-76 (8th Cir. 2009) (allowing
*Bivens* procedural due process action to proceed against a prison official); *Tellier v. Fields*, 280
F.3d 69, 79-93 (2d Cir. 2000) (denying summary judgment to prison officials in a *Bivens*
procedural due process claim regarding confinement in a Special Housing Unit); *Sonntag v.
Dooley*, 650 F.2d 904, 907 (7th Cir. 1981) (implying a *Bivens* remedy for violation of procedural
due process rights); *Shayesteh v. Raty*, No. 205-CV-85, 2007 WL 2317435, at *4 (D. Utah Aug.
7, 2007) (listing the allegations necessary "[t]o state a procedural due process claim under
*Bivens*" but concluding that the plaintiff failed to satisfy them).  As another federal district court
has noted, it is "well-established" that a procedural due process claim is "proper in a *Bivens*
action."  *Olesen v. Morgan*, No. 1:06-CV-959, 2008 WL 5157459, at *3 (N.D.N.Y. Dec. 8,
2008).

   A particularly relevant example is *Magluta v. Samples*, where a federal prisoner filed a
*Bivens* action alleging that his placement in administrative detention without hearings and
reviews violated his procedural due process rights.  375 F.3d 1269, 1271 (11th Cir. 2004).  The

district court granted a motion to dismiss premised on qualified immunity, although it did not disagree that a *Bivens* claim was available in that context. *Id.* at 1278. The Eleventh Circuit reversed the dismissal, concluding not only that the prisoner had properly stated a *Bivens* procedural due process claim, but that because the prisoner's liberty interest was clearly established at the time he was placed in administrative detention, the defendants were not entitled to qualified immunity. *Id.* at 1276-77. Similarly, McMillan's procedural due process claim for damages caused by deprivation of his liberty interests is a proper *Bivens* action.

Given the wealth of decisions recognizing *Bivens* procedural due process claims, Defendants' argument that *Bivens* cannot properly apply in this context is nothing short of surprising. Mot. at 10-11. First, Defendants' implication that the Supreme Court has held that *Bivens* does not apply in the procedural due process context, *see id.* at 10 ("In the context of procedural due process, the Supreme Court noted that such claims are not appropriate for *Bivens* . . . .") (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)), is at best a misreading of *Malesko*. The question in *Malesko* was whether a corporation could be held liable under *Bivens* under a theory of *respondeat superior*. 534 U.S. at 63. Because "[t]he purpose of *Bivens* is to deter *individual* federal officers from committing constitutional violations," the Supreme Court declined to extend *Bivens* liability to corporate entities. *Id.* at 70 (emphasis added). Here, McMillan's *Bivens* claim is asserted against *individual officers* for harm caused by their violation of his due process rights. This is exactly the sort of "compensable injury to a constitutionally protected interest" for which damages claims are available, *Davis*, 442 U.S. at 234, and *Malesko* does not foreclose McMillan's claim.

Second, Defendants argue that a *Bivens* remedy should not be recognized here because inmates such as McMillan have an alternative way to protect their due process rights; namely, by

filing a "suit seeking injunctive relief against the BOP."  Mot. at 11.  As noted above, McMillan

is indeed asserting claims for injunctive relief against the Defendants in their official capacities.

Compl. at 17-18.  However, although an injunction can provide prospective relief, it cannot

remedy the past harm suffered by McMillan.  Just as injunctive relief against the Federal Bureau

of Narcotics could not have remedied the "humiliation, embarrassment, and mental suffering"

endured by *Bivens* due to violation of his Fourth Amendment rights, 403 U.S. at 389-90, so here

an injunction against the Defendants cannot compensate McMillan for damages he has suffered

due to the violation of his due process rights.  The availability of a very different kind of relief is

not an adequate alternative to money damages, and McMillan's *Bivens* claim should not be

dismissed.

**E.     McMillan Has Stated a Claim for Violation of His Due Process Rights**

To assert a claim of denial of due process, a plaintiff must allege that (1) he was deprived

of a liberty or property interest (2) without the constitutionally required safeguards.  *Bd. Of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972).   In his Complaint, McMillan has

alleged facts sufficient to satisfy both elements.

**1.     McMillan has alleged a liberty interest in avoiding transfer to and continued confinement in ADX**

Prison conditions that "'impose atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process

Clause." *Trujillo v. Williams,* 465 F.3d 1210, 1225 (10th Cir. 2006) (quoting *Sandin v. Conner,*

515 U.S. 472, 484 (1995)) (holding that prisoner stated a Fourteenth Amendment due process

claim because his alleged extended stay in solitary confinement was atypical from ordinary

incidents of prison life).  The determination of whether there is a protected liberty interest is

"highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in

517372

their totality." *Thompson v. Winn*, No. 07-CV-00025-MSK-KLM, 2008 WL 901570, at *6 (D. Colo. Mar. 31, 2008) (denying a motion to dismiss ADX prisoner's due process claim because "the Court is not prepared to say that the Plaintiff cannot prove facts to demonstrate a protected liberty interest"); Order Setting Prelim. Sched. Conf. at 3 ("Whether Defendants have violated Plaintiff's constitutional rights is a fact-specific, individualized determination.").

The Supreme Court most recently considered the issue of a prisoner's liberty interests in *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005).  In addressing whether a prisoner had a liberty interest in avoiding transfer to the Ohio supermax prison, the Court considered numerous factors, including the severe limitations in solitary confinement, the indefinite placement in those conditions, and the impact of transfer to the supermax on the inmates' eligibility for parole.  The Court concluded that taken together, these factors constituted an atypical and significant hardship in relation to the ordinary incidents of prison life and therefore implicated a liberty interest.  *Id.*

The *Wilkinson* Court also noted that after *Sandin*, the liberty interest inquiry may require "identifying the baseline from which to measure what is atypical and significant in any particular prison system." *Wilkinson*, 545 U.S. at 223 (concluding that placement in Ohio's supermax prison would impose an "atypical and significant hardship under any plausible baseline"); *see also Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1340 (10th Cir. 2007) (discussing need for baseline analysis after *Sandin*). Circuit courts have reached differing conclusions regarding the baseline they should use to evaluate whether there is "atypical and significant hardship" in any particular prison conditions. Some circuits have concluded that the appropriate baseline is the general population. *See Beverati v. Smith,* 120 F.3d 500, 504 (4th Cir. 1997); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("The *Sandin* Court seems to suggest that a major difference between the conditions for the general prison population and the

segregated population triggers a right to a hearing."), *opinion amended on denial of reh'g,* 135 F.3d 1318 (1998).  Other circuits have concluded that the appropriate baseline is the conditions in the same type of segregation as the conditions the plaintiff is facing, whether it is administrative or disciplinary segregation.  *See Wagner v. Hanks*, 128 F.3d 1173, 1175 ("[U]nder *Sandin* the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population.").

In *DiMarco*, the Tenth Circuit recognized the "inconsistent standards" in its own past decisions but, rather than firmly establishing a baseline for comparison, instead relied on "a few key factors, none dispositive," in determining whether the plaintiff's due process rights were violated.  473 F.3d at 1340, 1342.  Under *DiMarco*, relevant factors might include whether: (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson;* and (4) the placement is indeterminate.  *Id.* at 1342.  At this early stage of the case and without a discovery record, there are no facts before the Court to evaluate those factors except those alleged in McMillan's Complaint, which must be accepted as true.[5]

Decisions in this District have repeatedly found at the motion-to-dismiss stage that ADX inmates have sufficiently pleaded the existence of a liberty interest in complaints asserting denial of due process.  For example, in *Ajaj v. United States*, the court stated that:

> Mr. Ajaj has alleged minimally sufficient facts to identify a liberty interest. In particular, he claims that for an indefinite period he has been placed in special confinement outside the general prison population in isolation. He also claims that the conditions of his confinement are not typical of the general population or

---

[5] In *DiMarco,* the court had the benefit of the record developed after discovery and a bench trial to which it could apply the four factors.  473 F.3d at 1338.

517372

> ordinary prison life because he is subject to extreme isolation and other limitations.

No. 03-cv-01959, 2006 WL 1305198, at *9-10 (D. Colo. May 11, 2006).  Likewise, in

*Silverstein v. Federal Bureau of Prisons*, the court denied defendant's motion to dismiss and

found that "Mr. Silverstein has stated a plausible due process claim."  704 F. Supp. 2d 1077,

1091 (D. Colo. 2010).  In *Silverstein*, the plaintiff had alleged that he was subjected to

"limitations on human contact and exercise time" and "long periods of lock-down" and had at

times "been isolated from all indications of human activity" and was permitted "limited phone

and visitation rights."  *Id*. at 1092 (finding Mr. Silverstein's conditions of confinement were

similar to those in *Wilkinson*); *see also Georgacarakos v. Wiley,* No. 07-cv-01712, 2008 WL

4216265, at *15 (D. Colo. Sept.12, 2008) (holding that allegations of conditions similar to those

in *Wilkinson* sufficiently stated a claim to survive a motion to dismiss); *Rezaq v. Nalley*, No. 07-

CV-02483-LTB-KLM, 2008 WL 5172363, at *11 (D. Colo. Dec. 10, 2008) ("Plaintiff has

sufficiently alleged the deprivation of a liberty interest considering the totality of the conditions

alleged in light of those asserted in *Wilkinson . . . ."*).

   Here, McMillan's allegations regarding his confinement mirror those in *Wilkinson*,

*Silverstein*, and *Rezaq*.   McMillan has alleged that "he has been locked away in a single man

cell" for almost four years; that "all interaction with staff is done through a cell door"; and that

"there are no opportunities to go to a gym, library, cafeteria, religious services, or any other

activity with other inmates."  Compl. at 4, 12.  He has also alleged that he is kept locked in his

cell, which has double doors "meant to restrict communications between inmates," and that he

only leaves his cell a maximum of five times per week to go to a "single man, dog kennel type

cage" for up to two hours of recreation.  *Id*. at 6.  The "long term isolation" has caused McMillan

to experience "psychological torture."  *Id*. at 8.  Moreover, McMillan's complaint, like the

complaint at issue in *Rezaq*, "implicitly suggests that such conditions are atypical of those experienced by prisoners at other facilities." 2008 WL 5172363, at *10.  Specifically, it alleges that "in no shape form or fashion do these conditions of confinement meet the criteria for general population." Compl. at 6.  Thus, as in *Ajaj*, *Rezaq*, and *Silverstein*, Mr. McMillan has asserted facts sufficient to identify a liberty interest in avoiding transfer to and continued confinement at ADX.

>   **2.      McMillan has alleged he received insufficient process both as to his transfer and as to continued confinement at ADX.**

In addition to sufficiently alleging a liberty interest in avoiding confinement at ADX, a prisoner must also sufficiently allege that he failed to receive the appropriate level of process regarding placement and continued confinement at ADX. *Wilkinson*, 545 U.S. at 224.  McMillan has done so here.  He alleges that he has not received *any* process in connection with his transfer to ADX.  Compl. at 17.  In particular, McMillan alleged that he was denied any type of hearing and that defendants Collins and Fenlon told him that he "did not need a due process hearing and that Plaintiff could be held in such conditions indefinitely." *Id*. at 10.  He also alleges that Defendants' actions "are contrary to BOP policy and the CFR." *Id*. at 11.

Defendants choose to ignore McMillan's allegations about the lack of process he received and argue instead that "even if Plaintiff had a liberty interest, the BOP has provided him with adequate process to challenge his confinement." Mot. at 15.  Their argument is one Defendants may be able to make on a proper record in a motion for summary judgment, but it is not appropriate at this time.  The existence and adequacy of any process Defendants claim McMillan has received can only be assessed after discovery.

Defendants' assertions about the process in place to review continued placement in ADX are both outside the scope of the Complaint and beside the point. Mot. at 17.  (And McMillan

-14-

does not concede that whatever process he may have received since arriving at ADX is constitutionally sufficient.)  McMillan's allegation is that he did not receive any process in connection with his transfer to or continued placement at ADX.  That allegation is sufficient to state a claim that he was denied constitutionally required due process.

**F.**     **McMillan Has Stated a Claim for Violation of His Eighth Amendment Rights**

Defendants argue in Section VI.B of their Motion that McMillan has failed to state a claim for violation of his right under the Eighth Amendment to be free from cruel and unusual punishment.  Mot. at 17-19.  In his Complaint, McMillan alleges that since his transfer to ADX in 2007, he has been housed in a unit labeled "general population" but which is the equivalent of solitary confinement.  Compl. at 4.  He alleges that he is deprived of all human contact and that the effect of his indefinite solitary confinement is "psychological torture."  *Id*. at 8, 10.  These allegations state a claim for violation of his Eighth Amendment rights.

McMillan's allegation that his confinement in ADX's general population is the equivalent of being held in solitary confinement must be accepted as true for the purposes of resolving Defendants' Motion.  *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007).  Courts have held that extended solitary confinement can constitute a violation of the Eighth Amendment.  Although solitary confinement is not *per se* unconstitutional, "where solitary confinement is imposed inappropriately or for too long a period, even the permissible forms of solitary confinement might violate the Eighth Amendment."  *Morris v. Travisono*, 549 F. Supp. 291, 294-95 (D.R.I. 1982) (internal quotation marks omitted) (citing *O'Brien v. Moriarty*, 489 F.2d 941, 944 (1st Cir. 1974)).  As the court explained in *Morris*, judicial review of prison officials' justification for holding a prisoner in solitary confinement is necessitated by the "severe psychological injury" that such confinement can cause.  *Id*. at 295.  Moreover, as the

-15-

Eighth Circuit stated in *Kelly v. Brewer*, "the reason or reasons for the segregation must not only

be valid at the outset but must continue to subsist during the period of the segregation."  525 F.2d

394, 400 (8th Cir. 1975).  "Conditions in prisons change as they do everywhere else, and a

reason for administrative segregation of an inmate that is valid today may not necessarily be

valid six months or a year in the future."  *Id.*

Recently, this Court denied a motion to dismiss where an ADX inmate alleged that his

extended solitary confinement constituted a violation of the Eighth Amendment.  In *Silverstein*,

the plaintiff alleged that he had been held in extended periods of solitary confinement at ADX

and at prisons where he had been housed prior to his transfer to ADX.  704 F. Supp. 2d 1077,

1080-86 (D. Colo. 2010).  The Court reviewed the history and nature of plaintiff's conditions of

confinement, including while at ADX.  The Court noted that even though the ADX unit where

plaintiff is housed "is a 'general population' unit, its inmates are still held in solitary

confinement."  *Id.* at 1084.  The Court rejected the Bureau of Prisons' motion to dismiss, holding

that "segregated confinement has continued for a sufficient length of time that relief on his

Eighth Amendment claim is plausible and dismissal is not appropriate against defendant BOP."

*Id.* at 1098; *see also Morris*, 549 F. Supp. at 295 (holding that housing an inmate in solitary

confinement for eight-and-a-half years resulted in "unnecessary and wanton infliction of pain" in

violation of the Eighth Amendment).  Likewise, McMillan's allegations that he has been in

solitary confinement for approximately four years and that his solitary confinement will continue

indefinitely state a claim under the Eighth Amendment that should be allowed to proceed to

discovery.

Defendants cite three cases that they argue dictate dismissal of McMillan's Eighth

Amendment claim.  Defendants contend that *Ajaj v. United States*, 293 F. App'x 575 (10th Cir.

2008), *Rezaq v. Nalley*, No. 07-cv-02483, 2010 WL 5157317 (D. Colo. Aug. 17, 2010), and

*Georgacarakos v. Wiley*, No. 07-cv-01712, 2010 WL 1291833 (D. Colo. March 30, 2010), stand

for the blanket proposition that the conditions of confinement at ADX cannot constitute cruel and

unusual punishment.  Mot. at 19.  Whatever the precise holdings of those cases, they do not

govern here because those cases were rulings, after discovery, on defendants' motions for

summary judgment.  Moreover, those cases did not address the question presented here:  whether

McMillan can state a claim for violation of the Eighth Amendment based on his alleged lengthy

and indefinite solitary confinement.  The answer to that question is yes.  *Silverstein*, 704 F. Supp.

2d at 1098; *Morris*, 549 F. Supp. at 295.

## G.      McMillan Has Stated a Claim for Conspiracy

McMillan alleges that the named defendants conspired to deprive him of his Fifth and

Eighth Amendment rights.  Compl. at 13.    Defendants contend that the "sole factual basis" for

McMillan's conspiracy claim is "the behavior [alleged] in claim 1."  Mot. at 20.  They argue that

"[b]ecause Plaintiff's allegation fail to state a claim for relief in Claim 1, he has failed to state a

claim for conspiracy."  *Id.*  This argument should be rejected because, as demonstrated in Parts E

& F, *supra*, McMillan has stated a claim for violation of his constitutional rights.

Defendants next argue that McMillan has failed to state a claim for conspiracy to violate

his constitutional rights because he "has failed to allege any facts showing that Defendants

conspired to violate his civil rights by designating him to ADX" and "the allegations are devoid

of any specific facts establishing that Defendants were involved in a conspiracy, that they acted

in concert, or that Plaintiff suffered an injury."  Mot. at 20.  Defendants are wrong.  Under the

liberal pleading standard that applies to McMillan's pro se Complaint, *Hall*, 935 F.2d at 1110, he

has alleged facts of a conspiracy by employees of ADX who acted in concert to deprive Plaintiff of constitutional protections.

McMillan alleges that he has been deprived of his rights under the Fifth and Eighth Amendments because defendants have housed him in the functional equivalent of solitary confinement without providing him with the due process required when subjecting an inmate to such conditions of confinement.  Compl. at 4-6.  He alleges that "all defendants have engaged in conspiratorial acts to violate Plaintiff's constitutional rights" and that the Defendants "have acted in concert to deprive Plaintiff of his Fifth and Eighth Amendment rights."  *Id*. at 13.  McMillan provides specific examples of Defendants acting in concert.  He alleges that Defendant Wiley, with the knowledge and approval of Defendants Lappin and Nalley, transformed McMillan's housing unit into a solitary confinement control unit while concealing that fact by continuing to label his unit a "general population" unit.  *Id*. at 7.  Indeed, McMillan alleges that the deprivation of his rights could not have occurred without Lappin, Nalley, Wiley and the other Defendants working together.  *Id*. at 8.  McMillan further alleges that they took this action "to circumvent all the due process and safeguards associated with the control unit."  *Id*.

McMillan also alleges that defendants Fenlon, Collins, and Madison are his Unit Team at ADX and that they preside together over McMillan's Unit Team meetings.  McMillan alleges that those defendants have worked together to keep him in conditions of solitary confinement without constitutionally required due process by falsifying paperwork that keeps McMillan in solitary confinement without providing him with the due process he is entitled to.  *Id.* At 13-15.  When viewed under the lenient pleading standard that applies to pro se Complaints, McMillan's allegations state a claim for conspiracy.

517372

McMillan filed an earlier version of his Complaint that contained significantly more detail than the version that Defendants attack in their Motion. *Compare* Feb. 8, 2010 Complaint (Doc. # 21) (18 pages) (the "2010 Complaint") *with* Sept. 29, 2009 Complaint (Doc. # 7) (35 pages) (the "2009 Complaint"). The 2009 Complaint contained 12 pages of allegations in support of McMillan's conspiracy claim alone. *Id*. at 6-18. That Complaint alleges that defendants falsified government documents to conceal the fact that he is housed in solitary confinement. *Id*. at 6. It also provides more detailed allegations about how defendants Collins, Fenlon, and Madison worked in concert to deprive him of his constitutional rights. McMillan describes an encounter in June 2009 involving defendants Fenlon and Collins. *Id*. at 8. In that encounter, Fenlon and Collins admitted to McMillan that his conditions of confinement were virtually identical to solitary confinement, and they told McMillan "as long as they call it 'general population' on paper that makes it so." *Id*.

In light of the 2009 Complaint, if the Court is inclined to accept Defendants' argument that McMillan has not pled enough facts in his 2010 Complaint to make out a claim for conspiracy, undersigned counsel respectfully suggests McMillan be permitted to replead his claim with the assistance of counsel. *See*, *infra*, at Part I.

**H.     Defendants Should Be Denied Qualified Immunity**

The doctrine of qualified immunity "is designed to protect public officials who act in good faith, on the basis of reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004). Under that doctrine, government officials who

are performing discretionary functions may be "shielded from liability for civil damages,"[6] but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) (quotations, alterations omitted). To survive a motion to dismiss premised on qualified immunity, a plaintiff need only "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

In evaluating whether the rights at issue were clearly established, the Court "need not engage in a 'scavenger hunt' for a case with identical facts," but should look to cases from the Supreme Court, the Tenth Circuit, and other circuits to "determine whether the official had fair notice that the described conduct was unconstitutional." *Tiscareno v. Anderson*, -- F.3d --, 2011 WL 857143, at *3 (10th Cir. Mar. 14, 2011) (quotation omitted); *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

The above discussion in Parts E and F establishes that McMillan has properly pled that his Fifth and Eighth Amendment rights were violated. Because numerous cases from the Supreme Court, the Tenth Circuit, and other circuits identifying and substantiating those rights predated McMillan's June 2007 transfer to ADX, those rights were also clearly established at the

---

[6] The qualified immunity doctrine can only shield government officials from money damage liability; it "does not protect them from injunctive remedies." *Jones v. City & County of Denver*, 854 F.2d 1206, 1207 n.2 (10th Cir. 1988). Thus, where—as here—the plaintiff seeks injunctive relief, "the defendants must proceed to trial on that question even if qualified immunity protects them from suit on the question of liability for money damages." *Id.* Furthermore, because "qualified immunity is only available to parties sued in their individual capacity," *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005), McMillan's official capacity claims are not subject to a qualified immunity defense.

time that the violations occurred, and the Defendants thus had "fair notice" that their actions were unconstitutional. *See*, *e.g.*, *Morris*, 549 F. Supp. at 294-95 (finding Eighth Amendment violation for imposition of extended solitary confinement); *Silverstein*, 704 F. Supp. 2d at 1095 (concluding that the law regarding an ADX inmate's liberty interest and due process rights "was clearly established as of June 13, 2005").

Furthermore, although *respondeat superior* is not a proper basis for *Bivens* liability, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009), both those who personally participated in violating a person's constitutional rights and those who "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" the enforcement of which violated the person's constitutional rights can be held liable under *Bivens*. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010); *see also Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (liability is appropriate if there is a link "between the constitutional deprivation and either the [defendant's] personal participation, his exercise of control or direction, or his failure to supervise").

Here, Mr. McMillan has alleged that each of the Defendants either personally and actively participated in violating his constitutional rights or that they created, implemented, or otherwise possessed responsibility for the unconstitutional policies enforced at the ADX. As a *pro se* plaintiff, the allegations of his Complaint must be liberally construed. *See Hall,* 935 F.2d at 1110. Under a liberal and reasonable construction of the Complaint, Mr. McMillan has alleged that all Defendants:

(1) know of McMillan's actual conditions of confinement, Compl. at 11;

(2) have unconstitutionally and knowingly denied McMillan the procedural due process to which he is entitled, *id.* at 4-5, 14;

(3) know of and have attempted the circumvent the laws and policies establishing McMillan's due process rights, *id.* at 4;

-21-

517372

(4) have "blatantly lie[d] as to the Plaintiff's conditions of confinement," *id.* at 9;

(5) have "shown a total and complete lack of concern" and "total indifference" to Plaintiff's rights, *id.* at 11;

(6) have conspired and acted in concert with the other Defendants to deprive McMillan of his due process rights and the right to be free from cruel and unusual punishment "by enacting and/or enabling conduct which they know to be in furtherance of unlawful and unconstitutional violations," such as improperly keeping him in solitary confinement, *id.* at 4-5, 13;

(7) have "chose[n] to falsify conditions" and are "well aware that by continuing to go along with all other defendants in stating false conditions of confinement that [Plaintiff] would be denied [his] constitutional rights," *id.* at 13; and

(8) could each have acted to prevent the "deprivation of Plaintiff's rights" by "performing his duties lawfully," *id.* at 14.

These allegations, which must be accepted as true for purposes of Defendants' motion, are

sufficient to support the denial of qualified immunity as to each of the Defendants.

In addition, McMillan has included specific allegations as to each of the Defendants'

actions that further support the denial of qualified immunity. *See* Compl. at 2-3, 7-8 (Defendant

Wiley is "in charge" of the ADX units and knows of McMillan's conditions of confinement, yet

has signed documents determining that McMillan "has no right to due process"; he has also

"knowingly and intentionally violate[d] Plaintiff's constitutional rights"); *id.* at 9 (Defendants

Fox and Jones, as assistant wardens, "have chosen to ignore Plaintiff's pleas for fair treatment"

and have "follow[ed] along with the behavior of the other defendants"); *id.* at 10 (Defendant

Javernick, as case manager coordinator, has signed documents determining that "no due process

is required" for Plaintiff); *id.* at 9-10 (Defendants Collins and Madison have falsely signed

documents incorrectly stating that Plaintiff is not in solitary confinement); *id.* at 10 (Defendants

Collins and Fenlon know of Mr. McMillan's conditions of confinement yet have concluded that

he "did not need a due process hearing and that plaintiff could be held in such conditions

indefinitely"); *id.* at 9-10 (Defendants Nalley and Lappin have approved the conditions of

confinement under which McMillan is housed and that he be held without due process; they have

also "chosen to ignore all [applicable] laws, policies, and procedures in an attempt to circumvent

the due process safeguards that protect inmates"); *id.* at 10-11 (Defendant Davis has "adopted

the same views" as Defendant Wiley and "is allowing the same constitutional violations to

occur").[7]  Together with the general allegations as to all Defendants, McMillan has thus stated

claims against each Defendant, and none of the Defendants should be granted qualified

immunity.

Defendants argue that McMillan must plead and prove that Defendants acted "with a

discriminatory purpose" in violating his procedural due process rights (Mot. at 23), but that

improperly attempts to import the standard from a *discrimination* case into a case about proper

process.  *See Iqbal*, 129 S. Ct. at 1948 ("Where the claim is invidious discrimination in

contravention of the First and Fifth Amendments, . . . the plaintiff must plead and prove that the

defendant acted with discriminatory purpose.").  As the Supreme Court noted in *Iqbal*, "[t]he

factors necessary to establish a *Bivens* violation will vary with the constitutional provision at

issue." *Id.*  Here, where Mr. McMillan claims that he was denied due process under the Fifth

Amendment, the Defendants' *purpose* in denying Mr. McMillan the procedure that he is due is

irrelevant.  That they knowingly denied him that procedure is sufficient to subject them to *Bivens*

liability.  *See Dodds*, 614 F.3d at 1204 (a plaintiff may properly allege liability of a supervisor by

alleging the supervisor acted with "the same state of mind required for the constitutional

deprivation he alleges").

As for McMillan's Eighth Amendment claim, McMillan has alleged that the Defendants

have "shown a total and complete lack of concern" and "total indifference" to Plaintiff's rights.

---

[7] Because McMillan concedes that the Court lacks personal jurisdiction over Defendant Watts, *supra* at Part C n.4, he does not address the specific allegations against that Defendant.

517372

Compl. at 11.  This should be liberally construed as alleging deliberate indifference by the

Defendants, which satisfies McMillan's pleading burden for purposes of qualified immunity.

Because the Defendants' alleged actions have "violate[d] clearly established . . . constitutional

rights of which a reasonable person would have known," *Mink*, 613 F.3d at 1000, they should all

be denied qualified immunity.

I.      **If the Court Is Persuaded by Any of Defendants' Arguments, the Court Should Permit McMillan to Replead His Claims**

McMillan filed two complaints prior to the one that is the subject of the Motion.  The

Court dismissed the first complaint and ordered McMillan to file an amended complaint because

it was unclear what claims McMillan alleged against the United States and what claims he

alleged against individual defendants.  Order Directing Pl. to File Amended Compl. (Doc. # 2).

Proceeding without the assistance of counsel, McMillan prepared and filed a detailed amended

complaint (Doc # 7), which the Court again dismissed.  The Court ordered McMillan to file a

second amended complaint because the amended complaint was hard to read and, at 32-pages,

was too long and repetitive.  Order Directing Plaintiff to File Second Amended Compl. (Doc. #

8).  The Court ordered McMillan to file a complaint that was legible and that contained a

"simple, concise, and direct" statement of his claims.  McMillan did so by filing the Second

Amended Complaint, which was written legibly and contained less detail than the prior

complaint.  (Doc. # 21.)

McMillan, who is not a lawyer and who has not had the benefit of counsel until recently

(and after the filing of the second amended complaint), did his best to follow the Court's

directives in preparing his complaint.  If the Court determines that any of McMillan's claims

should be dismissed based on the Second Amended Complaint, McMillan respectfully requests

that he be permitted to re-plead those claims with the assistance of undersigned counsel.  *See*

517372

*Hall*, 935 F.2d at 1110 ("Not every fact must be described in specific detail and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint."); *Dees v. Vendel*, 996 F.2d 310, 1993 WL 191815, at *1 (10th Cir. 1993) ("In light of Plaintiff's pro se status, and in light of Fed. R. Civ. P. 15(a)'s requirement that leave to amend be 'freely given,' we hold that the court's refusal to grant Plaintiff leave to amend was an abuse of discretion.").  In addition, if the Court would benefit from having the Second Amended Complaint restated by counsel to facilitate the Court's evaluation of his claims, both for the purpose of resolving the Motion and to better frame the issues in the litigation, counsel is willing to do so promptly.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings should be denied.


DATED:  March 21, 2011

Respectfully submitted,

_\_\_\_/s/ Jason M. Lynch\_\_\_\__
Jason M. Lynch
Glenn E. Roper
Katherine A. Roush
REILLY POZNER LLP
511 16th St., Suite 700
Denver, CO 80202

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2011, I electronically filed the foregoing
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGEMENT ON THE PLEADINGS with the Clerk of Court using the CM/ECF system which
will send notification of such filing to the following:


Juan G. Villasenor
Assistant United States Attorney
United States Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, CO  80202

EMAIL:  juan.villasenor@usdoj.gov


_____*/s/ Ann Romanelli*_____

517372