IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01709-WYD-KLM

SHANE McMILLAN,

      Plaintiff ,

v.

WILEY,
FOX,
JONES,
JAVERNICK,
COLLINS,
FENLON,
MADISON,
NALLEY,
WATTS,
LAPPIN, and
DAVIS,

      Defendants.

---

## ORDER

---

## I.   INTRODUCTION

THIS MATTER is before the Court on both Defendants' Motion for Judgment on the Pleadings (ECF No. 65), filed February 23, 2011, and Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 86), filed May 11, 2011.  I note that a response, reply and surreply were filed in connection with the Motion for Judgment on the Pleadings.  Plaintiff's Motion for Leave to File Amended Complaint was referred to Magistrate Judge Mix for a Recommendation by order of reference dated February 16, 2010.  On May 27, 2011, Magistrate Judge Mix issued a Recommendation that the

Motion for Leave to File Amended Complaint be denied. Plaintiff filed a timely objection to the Recommendation and Defendants filed a response. The motions are fully briefed and ripe for my review. Since the issues addressed in the two motions are related, I address them both in this Order.

II.    BACKGROUND

This action involves the circumstances associated with Plaintiff's incarceration at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX"). Until October 2010, Plaintiff was proceeding *pro se* until he secured the services of defense counsel through his placement on the Court's list of individuals in need of *pro bono* counsel. On October 28, 2010, *pro bono* counsel for the Plaintiff filed their entries of appearance in this matter.

On February 23, 2011, Defendants filed the pending Motion for Judgment on the Pleadings seeking to dismiss Plaintiff's claims in their entirety. Since the parties disagree as to the scope of Plaintiff's current Complaint (the Second Amended Complaint, filed February 8, 2010), contemporaneous to Plaintiff responding to the Motion for Judgment on the Pleadings, Plaintiff sought leave to amend his Second Amended Complaint to further clarify the claims at issue.[1]

III.   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

In the Second Amended Complaint, Plaintiff brings three claims against the

---

[1]   After reviewing Plaintiff's response to the Motion for Judgment on the Pleadings, I issued a Minute Order, dated April 5, 2011, notifying the Plaintiff that any requests to amend his Second Amended Complaint could not properly be contained in a responsive pleading and must be filed in a separate motion under D.C.COLO.L.CivR 7.1.C and controlling case law.

Defendants under *Bivens v. Six Unknown Named Agent of Fed. Bureau of Narcotics* 403 U.S. 388 (1971).[2]  Plaintiff has sued the following individual Defendants: former ADX Warden Wiley; ADX Associate Warden Fox; ADX Associate Warden Jones; ADX Unit Manager Javernick; ADX Unit Manager Collins; Fenlon, Plaintiff's case manager; Madison, Plaintiff's counselor; Bureau of Prisons ("BOP") North Central Regional Director Nalley, who works in Kansas City, Kansas; Watts, who is the BOP's national inmate appeals coordinator in Washington, D.C.; BOP Director Lappin, who works in the District of Columbia; and ADX Warden Davis.  (Second Am. Compl. at 2-3.)

In Claim 1(a), Plaintiff alleges that his confinement at the ADX violates procedural due process.  (Second Am. Compl. at 4.)  In Claim 1(b), Plaintiff alleges that his confinement violates the Cruel and Unusual Clause of the Eighth Amendment.  (Second Am. Compl. at 4.)  In Claim 2, Plaintiff alleges that Defendants have conspired to violate his Fifth and Eighth Amendment rights by allegedly committing the Constitutional violations contained in Claim 1.  (Second Am. Compl. at 13.)  Plaintiff has sued the Defendants in both their official and individual capacities and is seeking monetary, declaratory, and injunctive relief.  (Second Am. Compl. at 17-18.)[3]

Defendants seek dismissal of all claims arguing the following: (1) the Court lacks subject matter jurisdiction over Plaintiff's claim for money damages against Defendants in their "official capacities" as sovereign immunity bars such claims; (2) the Court lacks

---

[2] There is some disagreement as to whether Plaintiff asserts a fourth claim under the APA.  I address this issue later in the Order.

[3] I note that on February 9, 2010, District Judge Brimmer issued an Order dismissing the Bureau of Prisons ("BOP") as a party, holding that sovereign immunity barred Plaintiff's claims against the BOP.  (ECF No. 22.)

-3-

personal jurisdiction over Defendants Lappin, Nalley and Watts as they do not have minimum contacts with Colorado; (3) even if the Court has jurisdiction, Plaintiff lacks a *Bivens* remedy for his procedural due process claim; (4) even if Plaintiff had such a remedy, he has failed to allege sufficient facts showing that his confinement at the ADX deprived him of a constitutionally protected liberty interest or an adequate process to challenge his confinement; (5) Plaintiff has failed to allege that the conditions of his confinement at the ADX violates the Eighth Amendment; (6) Plaintiff has failed to allege a viable claim for civil conspiracy against the Defendants; and (7) Defendants are entitled to qualified immunity as to all of Plaintiff's claims.

By way of background, in the Second Amended Complaint, Plaintiff alleges that he was designated to the ADX in 2007 and that he is being held in "solitary confinement." (Second Am. Compl. at 4.) He contends that he is confined to a cell measuring 8'x12' behind double doors. (Second Am. Compl. at 6.) Plaintiff further alleges that he leaves his cell up to five times per week for two hours of recreation in a single man cage, that he consumes his meals alone in his cell and that he has "no human contact unless he is shackled and chained to be escorted by guards from his cell." (Second Am. Compl. at 6.) He also alleges that these conditions of confinement do not meet the "criteria for general population." (Second Am. Compl. at 6.) Plaintiff goes on to claim that he does not have the opportunity to go to a gym, library, cafeteria, religious services, "or any other activity with other inmates." (Second Am. Compl. at 12.)

Plaintiff claims that Defendant Wiley, with the approval of BOP Director Lappin and Regional Director Nalley, "transformed" certain ADX general population units into

"control units," but continued to refer to them as "general population."  (Second Am. Compl. at 7.)  Plaintiff further alleges that Defendants Fox and Jones have ignored his "pleas for fair treatment" and that both have stated in government documents that Plaintiff is housed in the general population despite "the overwhelming evidence that proves otherwise."  (Second Am. Compl. at 9.)  Moreover, Plaintiff contends that Defendants Fenlon, Collins and Madison have allegedly "signed off" on administrative remedies stating that Plaintiff is not housed in solitary confinement.  (Second Am. Compl. at 9-10.)  Plaintiff alleges that Defendant Javernick also signed administrative remedies, stating that Plaintiff is not due any process.  (Second Am. Compl. at 10.)  Plaintiff goes on to claim that Warden Davis has "adopted the same views as [former Warden] Wiley."  (Second Am. Compl. at 10.)

Plaintiff alleges that Defendants are aware of his conditions of confinement but they have shown "a total and complete lack of concern for [his] rights."  (Second Am. Compl. at 11).  Plaintiff contends that while Defendants "know that Plaintiff is housed in solitary confinement they have repeatedly signed off on falsified gov't documents stating that" certain ADX units are "general population" units.  (Second Am. Compl. at 13).  He alleges that Defendants "continue to conspire to keep" him in solitary confinement, and that Defendants have "engaged in conspiratorial acts to violate [his] constitutional rights."  (Second Am. Compl. at 13).

A.      Standard of Review

Defendants' Motion for Judgment on the Pleadings seeks to dismiss Plaintiff's claims in the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(c).  Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a

party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings . . . .  In this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2002).

The Tenth Circuit has instructed that courts analyze Rule 12(c) motions under the same standards applicable to motions under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  *Park University Enterprises, Inc. v. American Casualty Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006).  Under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Jordan-Arapahoe, LLP v. Board of County Com'rs of County of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  "To survive a 12(b)(6) motion to dismiss, a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief . . . plausible on its face.'"  *Id.* (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1940 (2009).  Plaintiff "must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 2011 WL 1468369 at *2 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate. . . has been incorporated" into the 12(b)(6) inquiry." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 2011 WL 1468369 at *2.

      B.    <u>Subject Matter Jurisdiction Over Plaintiff's Official Capacity Claims for Damages</u>

Defendants seek to dismiss Plaintiff's claims for monetary damages against the Defendants in their official capacities because there is no waiver of sovereign immunity. The United States, as a sovereign, is immune from suit unless it has waived its immunity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Because the jurisdiction of federal courts is limited, there is a presumption against . . . jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (quoting *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999)).

In response, Plaintiff concedes that the United States has not waived its

sovereign immunity as to the availability of money damages for his claims.  Based on my careful review of the record, I find that Plaintiff's claims for monetary damages against the Defendants in their official capacities are barred by sovereign immunity and are properly dismissed for lack of subject matter jurisdiction.

      C.    <u>Personal Jurisdiction Over Defendants Lappin, Nalley and Watts</u>

Defendants Lappin, Nalley and Watts move to dismiss the Complaint for lack of personal jurisdiction.  As an initial matter, I note that in his response, Plaintiff concedes that the Court lacks personal jurisdiction over Watts.  Thus, I dismiss Plaintiff's claims against Defendant Watts.

Neither Lappin nor Nalley resides or works in the State of Colorado.  According to the Complaint, Lappin is the National Director of the BOP and resides in Washington, D.C.  (Second Am. Compl. at 3.)  Nalley is the Regional Director of the BOP and resides in Kansas City, Kansas.  (Second Am. Compl. at 3.)  Plaintiff bears the burden of establishing that the Court has personal jurisdiction over both Lappin and Nalley. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). As a court of limited jurisdiction, this Court may only exercise jurisdiction over nonresident defendants if: (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo.2005).  Therefore, a

due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute.

Due process first requires that Plaintiff demonstrate that both Lappin and Nalley have "minimum contacts" with the forum state, which is Colorado. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Although Plaintiff contends that Lappin and Nalley "had direct knowledge of and approved the transformation of [Plaintiff's] ADX housing unit" from a general population unit into a solitary confinement "control" unit (ECF No. 74 at 6), such "attempts to make out a case for personal jurisdiction over these defendants by arguing that each of them authorized or implemented [actions] knowing that the effects of these [actions] would be felt by him in Colorado" are insufficient to establish minimum contacts. *Hale v. Ashcroft*, 2007 WL 2350150 at *3 (D. Colo. 2007); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (noting that "the mere foreseeability of causing injury in another state is not a sufficient benchmark for exercising personal jurisdiction").

Moreover, "[i]t is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state." *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003). Thus, I find that allegations against Lappin and Nalley for actions taken in their supervisory roles, and their awareness and alleged approval of the "transformation" of Plaintiff's unit to solitary confinement are not sufficient to establish personal jurisdiction. Accordingly, Plaintiff's claims against Lappin and Nalley are dismissed for lack of personal jurisdiction.

D.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity to suit on Plaintiff's claims.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity also offers protection from trial and other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*[4]

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it

---

[4] In a recent decision, the Supreme Court held that courts are no longer required to follow the *Saucier* format in evaluating a qualified immunity claim.  *Pearson v. Callahan*, 555 U.S. 223 (2009).

would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

      E.    <u>Fifth Amendment Claim</u>

In Claim 1(a), Plaintiff alleges that the conditions in the general population unit at ADX implicate a liberty interest. Additionally, Plaintiff contends that his placement and continued confinement at ADX is in violation of his Fifth Amendment right to due process.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. CONST. Amend. V. The Supreme Court has recognized *Bivens* liability for violations of the Fifth Amendment Due Process Clause. *See Davis v. Passman*, 442 U.S. 228 (1979) (finding implied damages remedy under the Due Process Clause of the Fifth Amendment). To state a due process claim, Plaintiff must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989). Here,

-11-

Defendants contend that Plaintiff has not sufficiently pled a due process violation because he has failed to demonstrate the loss of a liberty interest.

Prisoners retain "'only a narrow range of protected liberty interests.'" *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir.1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1982), overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)). The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). An inmate contending that the conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an "atypical and significant hardship" when compared to the ordinary incidents of prison life. *Id.* at 223.

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists. These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate. . . ." *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

Here, I find that Plaintiff's allegations fail to establish that he is deprived of a liberty interest by being confined at the ADX because the conditions are not atypical and significant. First, Plaintiff's criminal history supports his placement at the ADX based on

a legitimate penological interest.  Plaintiff has convictions for conspiracy to possess and to distribute methamphetamine, contempt of court, and for assault of a government employee.  (ECF No. 65.)  The Court may take judicial notice of Plaintiff's criminal history, as it is in the public record.  *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007).

Second, while Plaintiff's allegations of restricted liberty, amenities, recreation, and social opportunities demonstrate harsh conditions, I find that they are both conclusory and fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary course of prison life to implicate a liberty interest.  In recent matters, the conditions at ADX have been found to not give rise to a protected liberty interest.  *See Georgacarakos v. Wiley*, 2010 WL 1291833 *12 (D. Colo. 2010); *Saleh v. Federal Bureau of Prisons*, 2010 WL 5464294 (D. Colo. 2010); *Rezaq v. Nalley*, 2010 WL 5157317 (D. Colo. 2010).  I further find that Plaintiff's contention that the labeling of ADX units as general population instead of solitary confinement does not render the conditions of confinement extreme or atypical.

Third, Plaintiff alleges that his placement is "indefinite" because Defendants Collins and Fenlon have told him that he "does not need a due process hearing" and that he "could be held in such conditions indefinitely."  (Second Am. Compl. at 10.)  However, BOP procedures provide "that an inmate's security classification is reviewed on at least an annual basis, if not more frequently due to intervening events."  *Georgacarakos*, 2010 WL 1291833 at *6.  Also, under federal law, confinement at ADX does not disqualify Plaintiff from earning good time credits.  *See* 18 U.S.C. § 3624(b)(1) (providing that all BOP inmates, who are serving a term of imprisonment of more than

one year other than a life sentence, may receive good-time credit). I find that Plaintiff's allegation that his confinement in ADX is "indefinite" is not plausible in light of both the BOP regulations and 18 U.S.C. § 3624(b)(1).

Fourth, Plaintiff has failed to allege that his confinement at ADX increases the length of his sentence. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (finding a protected liberty interest when the confinement is both indefinite and where placement in the OSP automatically rendered an inmate ineligible for parole). Therefore, I find that Plaintiff's allegations do not give rise to a protected liberty interest to support a claim for violation of due process based on Plaintiff's placement and continued confinement at ADX.

However, even if a protected liberty interest exists, Defendants assert that Plaintiff received adequate due process. The Court considers three factors in determining what level of process is due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Prisoners held in lawful confinement have their liberty interests curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225. Due process is satisfied if Plaintiff received the following: (1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity to

receive notice of and respond to the decision; and (3) safety and security concerns are weighed as part of the placement decision. *DiMarco*, 473 F.3d at 1344 (citation omitted).

I find that the BOP's regulation on security classification, which provides for review on at least an annual basis, along with its process governing admissions to the Step-Down Program, where inmates receive "a review of their placement at least every six months via program reviews" provide a sufficient level of due process. *Saleh v. Federal Bureau of Prisons*, 2010 WL 5464294 at *5; *see Georgacarakos*, 2010 WL 1291833 at *6. Further, Plaintiff states in his Second Amended Complaint that he has utilized these administrative procedures and submitted numerous "administrative remedy forms" or "BP-9's" to BOP officials that have been reviewed and signed by the warden. (*See* Second Am. Compl. at 7-9); *see* 28 C.F.R. § 542.14 (outlining the procedure an inmate must follow in filing a formal written Administrative Remedy Request or BP-9).

Thus, I agree with Defendants that this claim should be dismissed because Plaintiff fails to state a plausible claim that his confinement at ADX interferes with a liberty interest or that he was deprived of a sufficient level of procedural due process.[5] Moreover, to the extent that Plaintiff asserts this claim against the Defendants in their individual capacities, they are entitled to qualified immunity. I find that there is no clearly established law that the conditions in the ADX general population implicate a

---

[5] In light of my finding that Plaintiff's Fifth Amendment claim is dismissed for failure to state a claim, I need not address Defendants' alternative argument that Plaintiff lacks a *Bivens* remedy for this type of injury.

liberty interest for which certain procedural protections are due.  Thus, the Defendants are entitled to qualified immunity on this claim.

      F.    <u>Eighth Amendment Claim</u>

In Claim 1(b), Plaintiff alleges that his confinement violates the Eighth Amendment to the United States Constitution.  The Eighth Amendment provides protection against cruel and unusual punishment.  This protection imposes a duty on prison officials to maintain humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and a duty to provide inmates with reasonable protection from serious bodily harm.  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).  As to the first requirement, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*

The deliberate indifference requirement provides that a prison official must act wanton or willfully and have a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834-35 (quotation omitted).  "[T]he Supreme Court has explained that 'deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.'"  *DeSpain*, 264 F.3d at 972 (quoting *Farmer*, 511 U.S. at 835).  "The Court

defined this 'deliberate indifference' standard as equal to 'recklessness,' in which 'a person disregards a risk of harm of which he is aware." *Id.* (quoting *Farmer*, 511 U.S. at 836-37).

The test for deliberate indifference is both objective and subjective. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "The objective component of the test is met if the 'harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2006)). To prevail on the first prong, even severe restrictions do not satisfy the objective component if the inmate is not deprived of "the minimal civilized measure of life's necessities." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). This Court recently found that the conditions of confinement at ADX do not rise to the level of an Eighth Amendment violation, "nor do they constitute an atypical and significant hardship sufficient to give rise to a liberty interest." *Georgacarakos*, 2010 WL 1291833 at *12. "The conditions at ADX are undoubtedly extremely restrictive. However, they are not so extreme or inhumane that they could be deemed a significant departure from contemporary standards of decency, applied to the prison context." *Id.* Additionally, the Tenth Circuit has also concluded that the conditions of ADX do not violate the Eighth Amendment. *See Ajaj v. United States*, 293 Fed.Appx. 575, 582-84 (10th Cir. 2008) (finding conditions such as "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an 8th Amendment violation).

Based on my review of the Second Amended Complaint, I find that Plaintiff has failed to make sufficient allegations to establish that he has been deprived life's most

basic needs.  In fact, Plaintiff states that he receives meals, is housed in a cell, and has

limited, but regular, recreation periods.  (*See* Second Am. Compl. at 6) (stating that

Plaintiff eats his meals alone, leaves his cell up to five times per week for recreation in a

man cage, and has no human contact unless he is shackled and escorted by guards.)

Rather, Plaintiff's primary complaint seems to be his lack of social opportunities.  "These

conditions are common to many high-security prisons around the country, and can

hardly be said to violate contemporary standards of decency."  *Georgacarakos*, 2010

WL 1291833 *12.  Thus, I find that Plaintiff's allegations fail to satisfy the objective

component of the deliberate indifference test.

To prevail on the subjective component of the deliberate indifference test, an

inmate must show that the prison official: (1) knows of a substantial risk of serious harm

posed to the inmate and (2) disregards that risk by failing to take reasonable steps to

abate the risk.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  To

recklessly disregard a risk, "[a] prison official must both be aware of facts from which the

inference could be drawn that a substantial risk of harm exists, and he must also draw

that inference."  *Farmer,* 537 U.S. at 837.  "[E]ven if a prison official has knowledge of a

substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk

unless he is aware of and fails to take reasonable steps to alleviate that risk."  *Id*.

Finally, the Tenth Circuit has indicated that the subjective component requires the

prison official to disregard the specific risk of harm claimed by the prisoner, not a more

general risk.  *Id*.

Here, Plaintiff has failed to show harm from his conditions of confinement, let

alone that Defendants knew such harm and acted with deliberate indifference to cause

it.  Plaintiff's allegations regarding the classification of his housing unit and that he is not actually confined in a "general population" unit fail to show that prison officials acted with a culpable state of mind.  Thus, Plaintiff's Eight Amendment claim fails and should be dismissed.  Furthermore, since Plaintiff has not established a necessary element of an Eighth Amendment constitutional violation, he cannot satisfy the first prong of the qualified immunity analysis.  *Saucier*, 533 U.S. at 201 (holding that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  Therefore, Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

  G. <u>Conspiracy Claim</u>

  In Claim 2, Plaintiff alleges that Defendants have conspired to violate his Fifth and Eighth Amendment rights.  (Second Am. Compl. at 13.)  The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable.  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  However, in order to succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Id.*  Further, "[w]hile a deprivation of a constitutional right is essential to proceed under a § 1983 claim, proof of an agreement to deprive will often require examination of conduct occurring prior to the deprivation."  *Id.* at 701-02.  To establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."  *Id.* (internal citations omitted).

Here, because I find that Plaintiff is not entitled to relief on his Fifth or Eighth Amendment claims, Defendants cannot be guilty of participating in a conspiracy to violate these constitutional rights. *See Snell*, 920 F.2d at 701. Moreover, since I have determined that Defendants are entitled to qualified immunity on Plaintiff's underlying Fifth and Eighth Amendment claims, "by definition, Plaintiff[] fail[s] to state a claim for conspiracy." *Gehl Group v. Koby*, 838 F. Supp. 1409, 1419 (D. Colo. 1993). Accordingly, this claim is dismissed.

H.    Administrative Procedure Act ("APA") Claim

Plaintiff contends that he asserted a fourth claim for relief under the APA. The claim is located in the "Request for Relief" section of the Second Amended Complaint. (Second Am. Compl. at 17.) While Defendants argue that Plaintiff has not properly pleaded this claim, because Plaintiff was *pro se* when he filed his Second Amended Complaint, I will liberally construe his filing and address this claim.[6] *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I will not be a *pro se* litigant's advocate, nor will I "supply additional factual allegations to round out [Plaintiff's Second Amended] [C]omplaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174-74 (10th Cir. 1997).

In his Surreply, Plaintiff clarifies that in this claim, he is challenging "the BOP's failure to abide by its own policies and the Code of Federal Regulations in its treatment

---

[6] As I previously stated, Plaintiff is currently represented by *pro bono* defense counsel, who entered appearances in the case subsequent to the filing of the Second Amended Complaint.

and [sic] of ADX prisoners." (ECF No. 82 at 3.) Thus, based on my review of the operative filings, I construe this claim to be alleging that the Defendants violated the APA by classifying D Unit at ADX as a general population unit instead of a control unit. (*See* Second Am. Compl. at 8) (generally alleging that the conduct of Defendants should be declared an abuse of agency discretion pursuant to the APA). Throughout his Second Amended Complaint, Plaintiff alleges that while D Unit is classified as a general population unit, it is, in effect, a control unit equivalent to solitary confinement. By federal regulation, before inmates may be placed in a control unit, certain requirements must be met and certain processes must be provided to the inmate. 28 C.F.R. §§ 541.40-.50. Plaintiff argues that Defendants' arbitrary classification of D Unit is an abuse of agency discretion under the APA. As a result of Defendants' improper designation of D Unit as general population, Plaintiff alleges that he was deprived due process because inmates designated to a general population unit are not afforded the same protections or due process as inmates designated to a control unit.

While most agency actions are reviewable under the APA, there are two notable exceptions. "The notable two exceptions, found in 5 U.S.C. § 701(a)(1) and (2), are for situations in which judicial review is expressly precluded by statute or the agency action is committed to agency discretion by law." *Payton v. United States Dep't of Agric.*, 337 F.3d 1163, 1167-68 (10th Cir. 2003). Here, the second exception is applicable, namely whether the agency action is committed to agency discretion by law. This exception applies when the "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

By statute, the BOP has the authority to house and classify prisoners.  The statute allows the BOP to develop

> an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental conditions of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

18 U.S.C. § 4081.  Considering this language, facility classifications are clearly committed to the discretion of the BOP, and thus, I have no meaningful standard upon which to judge the appropriateness of those decisions.  *See Heckler*, 470 U.S. at 830.

I further note that the Second Circuit has considered the authority conferred by § 4081 and noted that this, and a related statute "vest . . . broad unreviewable discretion in the Attorney General."  *Wolfish v. Levi*, 573 F.2d 118, 125 & n. 13 (2d Cir.1978). While *Wolfish* was later overruled on other grounds, this portion of the Second Circuit's holding has not been overturned.  *See Bell v. Wolfish*, 441 U.S. 520 (1979).  Moreover, the Supreme Court has recognized that "Congress has given federal prison officials full discretion" pursuant to § 4081 and there is "no legitimate statutory" basis for a prisoner to challenge classifications derived from such discretion.  *Moody v. Daggett*, 429 U.S. 78, 88 n. (1976); *see also Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1967) (noting that "the classification of prisoners rests within the sound discretion of the Attorney General").  Accordingly, I find that this claim should be dismissed for lack of subject matter jurisdiction.

IV.    RECOMMENDATION ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
       AMENDED COMPLAINT (ECF No. 89)

While the Motion for Judgment on the Pleadings was pending before me, on May

11, 2011, Plaintiff filed a Motion for Leave to File Amended Complaint (ECF No. 86).

The motion was referred to Magistrate Judge Mix by order of reference dated February

16, 2010.  On May 27, 2011, Magistrate Judge Mix issued a Recommendation on

Plaintiff's Motion for Leave to File Amended Complaint, which is incorporated herein by

reference.  *See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), D.C.COLO.LCivR. 72.1.

Magistrate Judge Mix recommends therein that Plaintiff's Motion for Leave to File

Amended Complaint be denied.

Magistrate Judge Mix advised the parties that they had fourteen (14) days to

serve and file written, specific objections to the Recommendations.  On June 13, 2011,

Plaintiff filed timely objections to the Recommendation which necessitates a *de novo*

determination as to those specified proposed findings or recommendations to which

objection is made since the nature of the matter is dispositive.  Fed. R. Civ. P. 72(b); 28

U.S.C. § 636(b)(1).

A.    Standard of Review

The Court should grant leave to amend a complaint "freely . . . when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, "upon

a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory

motive, failure to cure deficiencies by amendments previously allowed, or futility of

amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing

*Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In response to the Motion for Leave to File

Amended Complaint, Defendants argue that the requested relief should be denied because each proposed claim or amendment is futile.  (ECF No. 88 at 4-14.)  In her Recommendation, Magistrate Judge Mix also applied Fed. R. Civ. P. 16(b) to the relief requested.

B.    Analysis

Magistrate Judge Mix recommends that Plaintiff's Motion for Leave to File Amended Complaint be denied.  (ECF No. 89 at 2.)

1.    Fed. R. Civ. P. 16(c) - Good Cause

Initially, Magistrate Judge Mix noted that the Scheduling Order provided that the deadline for seeking leave to amend pleadings expired on September 17, 2010.  (ECF No. 55.)  Plaintiff filed his motion to amend long after the expiration of this deadline, thus, it is untimely.  Under these circumstances, and prior to review of the motion pursuant to Fed. R. Civ. P. 15(a), the Court considers whether Plaintiff has shown "good cause" under the standard set out in Fed. R. Civ. P. 16(b) for seeking to amend the current Second Amended Complaint (ECF No. 21).  *See Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) ("Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a). . . . Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.")).  "To establish 'good cause,' the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence."  *Denmon v.*

-24-

*Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993); *see also* Fed. R. Civ. P. 16(b) (a scheduling order deadline "may be modified only for good cause and with the judge's consent").

Relevant to this case, the addition of counsel generally does not amount to good cause under the standard set out in Fed. R. Civ. P. 16(b). *See, e.g.*, *Marcin Eng'g, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003) ("That new counsel is dissatisfied with the state of the case it inherited is not" good cause for action requested "long after the court-ordered deadlines have passed."). Although the pleading amendment deadline expired before the appearance of any counsel (as opposed to Plaintiff securing new counsel), Magistrate Judge Mix notes that once *pro bono* counsel entered their appearance, they delayed approximately six months before seeking leave to amend the Second Amended Complaint. Moreover, counsel did not move for an extension of time to seek amendment nor acknowledge in the Motion to Amend that they had an obligation to do so. Magistrate Judge Mix found that "[s]uch history does not necessarily evidence diligence." (ECF No. 89 at 4.) Magistrate Judge Mix concluded that while the motion is subject to denial on this basis, she "resolves the [m]otion on Defendants' argument that amendment would be futile." (ECF No. 89 at 5.) While I find no error with this portion of the Recommendation, I, too, will review the Recommendation and analyze the motion for leave pursuant to Fed. R. Civ. P. 15(a).

2.    Fed. R. Civ. P. 15(a) - Futility of Amendment

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor Servs, Inc.*, 175

F.3d 848, 859 (10th Cir. 1999); *see also Bellmon*, 935 F.2d at 1109-10 ("Although

dismissals under Rule 12(b)(6) typically follow a motion to dismiss . . ., a court may

dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the

facts alleged, and allowing him an opportunity to amend his complaint would be futile.")

(citations omitted).

Here, Magistrate Judge Mix correctly noted that there are two grounds upon

which Plaintiff's proposed Third Amended Complaint could be subject to dismissal: (1)

lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Claims Three and

Four); and (2) failure to state a claim upon which relief can be granted pursuant to Fed.

R. Civ. P. 12(b)(6) (Claims One, Two and Five).  (ECF No. 89 at 5-7.)

I note that the proposed Third Amended Complaint adds two APA claims (Claims

Three and Four) along with adding Defendants and factual allegations to the claims

currently pending in the Second Amended Complaint.

a.      Proposed Amendments to Claim One

Magistrate Judge Mix recommends that the proposed amendment to Claim One,

which alleges a procedural due process violation, are futile.  (ECF No. 89 at 7-9.)

Plaintiff proposes additional factual information regarding his designation and

confinement at ADX.  Magistrate Judge Mix found that the proposed Third Amended

Complaint "lacks sufficient or unique factual information to justify a different result.  This

is particularly true here given that Plaintiff does not allege that his confinement at ADX

prolongs his prison term or that it is indefinite (beyond arguments raised and rejected in

prior cases), two crucial facts in the establishment of a liberty interest.  *Saleh I*, 2010

WL 5464295, at *16 (citing *Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008)).

In the objection, Plaintiff argues that he has put forth additional allegations that his confinement at ADX is indefinite. Thus, he contends that he has properly stated a claim that Plaintiff's conditions of confinement implicate a liberty interest.

I incorporate by reference the cited authority and discussion on this very issue contained in section III(E) of this Order. Based on the enumerated *DiMarco* factors and recent case law, I find that Magistrate Judge Mix properly found that Plaintiff's proposed amendment does not implicate a liberty interest in his confinement at ADX. *See Saleh*, 2010 WL 5464294 at *3-*5; *Rezaq*, 2010 WL 5157317 at *6-*13; *Georgacarakos*, 2010 WL 1291833 at *12-*13; *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 652 (10th Cir. 2006); *Saleh I*, 2010 WL 5464295, at *13; and *Matthews v. Wiley*,744 F. Supp. 2d 1159 (D. Colo. 2010).

After carefully reviewing the additional allegations put forth by Plaintiff, I find they are conclusory and devoid of sufficient detail. *See Iqbal*, 129 S. Ct. at 1950. For example, Plaintiff alleges that he "has been held in extreme and indefinite solitary confinement . . . ." (Proposed Third Am. Compl. ¶ 1.) Plaintiff further alleges that "[b]y keeping Plaintiff in solitary confinement in the conditions described above for an indefinite duration, Defendants have deprived Plaintiff of basic human needs . . . ." (Proposed Third Am. Compl. ¶ 48.) These generalized and conclusory allegations of the conditions of confinement do not state that Plaintiff is subject to different conditions than any other inmate at ADX or different conditions than those that have been determined not to impose atypical or significant hardship.

Notably, Plaintiff's own allegations concede that he received at least two reviews

for entry into the Step-Down Program, but the Committee has "arbitrarily denied [him] entry into the Program." (Proposed Third Am. Compl. ¶ 70.) While Plaintiff contests the meaningfulness of his program reviews, *DiMarco* does not require the level of process alleged by Plaintiff in order for a term of confinement to be considered definite. *See DiMarco*, 473 F.3d at 1343-44. It is clear that Plaintiff has received at least two reviews of his confinement and the opportunity to administratively appeal an unsuccessful review. Therefore, based on my findings set forth in Section III(E) of this Order and my review of the proposed Third Amended Complaint , I find that Plaintiff has failed to sufficiently allege a protected liberty interest and overrule his objection. I agree with Magistrate Judge Mix's conclusion that amendment of this claim to assert additional factual information or Defendants would be futile.

### b. Proposed Amendments to Claim Two

Claim Two addresses an alleged conspiracy by Defendants to violate Plaintiff's constitutional rights. Because I agree with Magistrate Judge Mix that Plaintiff is not entitled to relief on his Fifth Amendment claim or his Eighth Amendment claim (discussion to follow), Defendants cannot be guilty of participating in a conspiracy to violate these constitutional rights. (*See* Section III(G) of this Order.) I overrule Plaintiff's objection and find that amendment of this claim to assert additional factual information or Defendants would be futile.

### c. Proposed Claim Three

Claim Three addresses whether proposed Defendant BOP's decision to deny Plaintiff placement in the Step-Down Unit Program at ADX violates the APA. In her Recommendation, Magistrate Judge Mix accurately noted that while most agency

actions are reviewable pursuant to the APA, there are two exceptions. The exception at issue here is statutory preclusion. *See Payton v. United States Dep't of Agric.*, 337 F.3d at 1167-68 (10th Cir. 2003). Specifically, 18 U.S.C. § 3621 confers "discretion on the BOP to designate a prisoner's place of imprisonment." *Wedelstedt v. Wiley*, 477 F.3d 1160, 1162 (10th Cir. 2007); *see also Matthews*, 744 F. Supp. at 1175 (noting that pursuant to § 3621, and in the context of placement at ADX, BOP can consider any seemingly relevant information in determining where to house an inmate). Thus, Magistrate Judge Mix found that "[p]ursuant to the clear language of the statute, decisions about where to incarcerate an inmate (which, when ADX is involved, necessarily include consideration of whether an inmate is entitled to be placed in particular units pursuant to the Step-Down Unit Program), fall within § 3621." (ECF No. 89 at 10-11.) However, Magistrate Judge Mix stated that under 18 U.S.C. § 3625, placement decisions governed by § 3621 are "exempt[] . . . from the APA's judicial review provisions." *See Jordan v. Wiley*, 2011 WL 441776 at *9 (10th Cir. 2011) (holding that the APA does not apply to substantive BOP disciplinary determinations involving the reduction of good-time credits); *see also Redmon v. Wiley*, 349 Fed.Appx. 251, 256 (10th Cir. 2009) (stating that the APA barred review of a BOP decision determining a particular prisoner's eligibility in a prison early release program governed by § 3621). Noting that this particular issue (whether the Court has jurisdiction to review the BOP's eligibility decisions for the Step-Down Unit Program) has not yet been decided, based on the cited authority and the similarities of those cases to the instant matter, Magistrate Judge Mix reasoned that Plaintiff's proposed Claim Three would be barred by statute.

In his objection, citing *Ajaj v. Federal Bureau of Prisons*, 2011 WL 902440 (D.

Colo. 2011), Plaintiff argues that § 3621 does not exempt a review of the BOP's denial

of his entry into the Step-Down Unit Program. However, I do not find *Ajaj* to be

sufficiently analogous to the allegations put forth in the instant matter. In *Ajaj*, the

plaintiff made an APA claim directed at a disciplinary notice issued by the defendants.

Essentially, plaintiff asserted that the decision to find him guilty of certain charges was

arbitrary and capricious because the defendants failed to consider plaintiff's written

statement and medical records. *Id.* at *12. The issue of whether the Court had

jurisdiction to consider the APA claim was not addressed. In fact, the defendants' sole

basis for seeking dismissal of the claim was that is was rendered moot by plaintiff's

transfer to another facility. *Id.* Thus, I find Plaintiff's objection to be without merit, and it

is overruled. I agree with Magistrate Judge Mix's well-reasoned recommendation that

amendment to assert this new claim against proposed Defendant BOP would be futile.

### d.  Proposed Claim Four

Claim Four challenges whether proposed Defendant BOP's designation of the D

Unit at ADX as a general population unit violates the APA. Magistrate Judge Mix

recommends that amendment of this claim would be futile. (ECF No. 89 at 12-13.) I

incorporate by reference the cited authority and discussion contained in section III(H) of

this Order. Based on my earlier finding that I have no meaningful standard upon which

to judge the appropriateness of the BOP's decision to classify D Unit as a general

population unit because facility classifications are clearly committed to the discretion of

the BOP, I overrule Plaintiff's objection. I agree and find no error with Magistrate Judge

Mix's recommendation that amendment to assert this claim against proposed Defendant

BOP would be futile.

e.     Proposed Claim Five

Claim Five addresses whether the conditions in the general population unit at ADX violate the Eighth Amendment.  Magistrate Judge Mix recommends that amendment of this claim to assert additional factual information or Defendants would be futile.  (ECF No. 89 at 14.)  I incorporate by reference the cited authority and discussion contained in section III(F) of this Order.

In his objection, Plaintiff asserts that by alleging additional facts, he has stated a plausible Eighth Amendment claim.  Specifically, Plaintiff adds allegations that "he is held in solitary confinement in his cell for twenty-two to twenty-four hours a day." (Proposed Third Am. Compl. ¶ 39).  He goes on to allege that when he "is permitted to leave his cell, it is only to go to a single man, dog-kennel-type cage for up to two hours of 'recreation.'"  (Proposed Third Am. Compl. ¶¶ 40-41).  Frequently, Plaintiff is denied outdoor recreation.  (Proposed Third Am. Compl. ¶¶ 40-41.)  Plaintiff claims that he "has little to no human contact" and has very limited opportunity to speak to other inmates. (Proposed Third Am. Compl. ¶¶ 43-45).  Plaintiff is deprived "of basic human needs such as contact with other people, environmental stimulation, and sufficient exercise." (Proposed Third Am. Compl. ¶¶ 48.)

After reviewing the additional factual allegations, I see no reason to deviate from my earlier finding that Plaintiff has failed to put forth sufficient allegations of an Eighth Amendment claim.  He has failed to add any information to refute my finding that he receives basic needs—meals, shelter, and regular recreation opportunities.  As I previously stated, Plaintiff's allegations about the lack of interaction with other inmates

fail to satisfy the objective component of the deliberate indifference test. *See Georgacarakos*, 2010 WL 1291833 at *12.

With respect to the subjective component of the deliberate indifference test, Plaintiff's conclusory allegations that the conditions of confinement have caused him "significant psychological and physical harm" are insufficient to show that Defendants knew about such harm and acted with deliberate indifference to cause it. *See Callahan*, 471 F.3d at 1159 (10th Cir. 2006); *Farmer*, 537 U.S. at 837. Thus, I overrule Plaintiff's objection and agree with Magistrate Judge Mix's recommendation that amendment of this claim to assert additional factual information or Defendants would be futile.

V.     CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (ECF No. 65), filed February 23, 2011, is **GRANTED.**  In accordance therewith, Claim 1(a), Claim 1(b), and Claim 2, contained in the Second Amended Complaint, are **DISMISSED WITH PREJUDICE** for failure to state a claim.  Plaintiff's APA Claim, contained in the "Request for Relief" section of the Second Amended Complaint, is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  Thus, the Second Amended Complaint is **DISMISSED** in its entirety.  It is

FURTHER ORDERED that the Recommendation of United States Magistrate Judge Mix (ECF No. 89) is **AFFIRMED AND ADOPTED**.  In accordance therewith, it is

FURTHER ORDERED that Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 86), filed May 11, 2011, is **DENIED**.

Dated:  September 14, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge